| | | |
|---|---|---|
| **P.R. AND B.R.,** for themselves and as next friend of **C.R.** | ) | Case No.: **3:05CV7395** |
| Plaintiff-Appellants | ) | **JUDGE JAMES G. CARR** |
| v. | ) | **MEMORANDUM IN SUPPORT OF PLAINTIFF-APPELLANTS' MOTION FOR JUDGMENT ON THE RECORD** |
| **WOODMORE LOCAL SCHOOL DISTRICT** | ) | |
| | ) | |
| Defendant-Appellees | ) | |
| | ) | Thomas J. Zraik (0023099) 5579 Monroe Street Sylvania, Ohio 43560 Telephone: (419) 882-2559 Facsimile: (419) 882-1425 |
| | ) | |
| | ) | |

## I. INTRODUCTION

This case is an appeal of denial of eligibility for special education and related services by the Ohio Department of Education ("ODE") in administrative decisions issued, first, by an appointed impartial hearing officer ("IHO") and, subsequently, by a state level review officer ("SLRO"). The issues for review involve primarily questions of statutory interpretation. The keystone question being whether C.R. (hereinafter "Student") was eligible under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. 1400 *et seq.*, to receive services as a child with an "other health impairment" ("OHI"). If so, the decisions the IHO and SLRO finding him ineligible must be reversed as a matter of law.

The appeal also includes two other issues, which arise from the eligibility question and involve denial of reimbursement for an independent educational evaluation ("IEE"), as well as the broader issue of the IHO's authority to provide relief under the IDEA and Section 504 of the Rehabilitation Act 29 U.S.C. 794 *et seq.*

In the event this Court reverses the ODE decisions below, it would be futile at this late date to require the District to develop an appropriate IEP for Student. On the other hand, Student wishes to attend community college and would benefit from compensatory educational services as recompense for Defendant's failure to evaluate Student's eligibility from as early as fifth or sixth grade, when his parents first sought the District's help, or later when Student failed several classes at the end of his sophomore year and his parents continued to ask for the District's intervention, or again in his junior year when academic and socialization crisis culminated in Parents' request for a due process hearing..

Affirmation of Student's eligibility under the IDEA would also provide critical support for his transition to post secondary education and, in addition, even such a belated identification could be critical in documenting Student's educational history, the impact of his disability upon his educational performance and ability to learn, and his entitlement to access supports, accommodations, and modifications at a postsecondary level.

## II. FACTS

A. Procedural Background

P.R. and B.R. (hereinafter "Parents") filed their initial request for due process ("Request") on or about January 18, 2005, alleging denial of a free, appropriate, public

education ("FAPE") to Student by Woodmore Local School District (hereinafter "District") due to the District's failure to identify Student as a child with a suspected disability. R. (2) Ex. A. Parents agreed to a temporary extension of time when, following receipt of the Request, the District took immediate steps to initiate a multifactored evaluation of Student. By Order of March 4, 2005, the IHO extended time for completing the due process hearing to April 15, 2005. R. 4(f)[1]

Parents subsequently filed an amended Request on or about January 31, 2005, adding claims only peripherally associated with the issues of concern here.[2] R. (2), Ex. B. District officials, meeting as part of the MFE team on March 24, 2005, informed Parent of their determination that Student did not qualify for services as a child with a learning disability ("L.D."). R. (4)(e), p. 88-89, 160. However, at Parent's request, the District agreed to reconvene another team meeting to reconsider Student's eligibility under an OHI identification, which they had not previously considered. R. (3) Ex. 62. R. (1)(f), p. 5-6.

On April 15, 2005, the IHO granted an additional extension of time, pending the second meeting of the MFE team to reconsider eligibility. R. 4(f) At the April 18, 2004 MFE team meeting, District officials again denied Student's eligibility, even under the OHI category, on the basis that the adverse impact of Student's disability did not sufficiently impair his educational performance. R. (3) Ex. 27; (4)(e), p. 102-103.

---

[1] The index to the Certified Record provided by the Ohio Department of Education appears to include all Orders, together with other documents, in R. (4)(f) identified only as "IHO's correspondence file (Manila Folder)".
[2] The additional claims in Parent's Amended Request concerned allegations of discrimination on the basis of disability associated with Student's participation in extracurricular sports, which is discussed in greater detail, *infra* at p. 24-26.

Parents then filed a Second Amended Request on or about May 19, 2005, seeking reversal of the District's decision denying Student's eligibility, requesting the IHO to require the District to develop an individualized education plan ("IEP") for Student, and asking for reimbursement for the cost of Student's independent educational evaluation ("IEE") obtained following Parent's disagreement with the District's MFE.  R. (2) Ex. C.

The two-day due process hearing began on the sixth of June and concluded on June 7, 2005, with closing briefs submitted by the parties on June 8, 2005, at the request of the IHO.  R. (1)(f) 6-7; (4)(g)[3](h).  In a written decision of June 17, 2005, the IHO identified Student as "other health impaired", but at the same time found Student to be ineligible for services under the IDEA and, as a result, not entitled to reimbursement of the IEE.  R. (4)(a), p. 15. On the other hand, the IHO ordered the District to develop a Section 504 Plan to provide certain specified accommodations for Student.  *Id.*

Parents filed their notice of appeal on the issues of eligibility and reimbursement for the IEE on or about July 12, 2005.  R. (1)(g).  ODE sent written confirmation of appointment of the SLRO on July 15, 2005.  R. (1)(b).  On or about July 28, 2005, the District filed notice of cross-appeal contesting the IHO's order for a Section 504 Plan.[4] The parties filed briefs on August 15, 2005, and the SLRO issued a decision on August 29, 2005.  R. (1)(e)(f), (c).

The SLRO affirmed the ineligibility determinations made by the District and IHO, denied Parent reimbursement for the cost of the IEE on additional grounds not considered by the IHO, and "set aside" the IHO's order requiring the District to provide a Section

---

[3] In an apparent typographical error, the index to the Certified Record incorrectly lists the District's August 15, 2005 brief, which was associated with the SLRO's review, in place of their June 8, 2005 brief as document (4)(g).
[4] The District's Notice of Appeal does not appear to have been included in the Certified Record and, therefore, is attached hereto.

504 plan.  R. (1)(c)  Regarding the IHO's identification of Student as OHI, the SLRO concluded that the IHO "did not intend" to find the Student to be "other health impaired" despite his statement to that effect.  *Id.* at p. 17.  Parents filed a timely appeal on October 13, 2005, asking this Court to review the findings and opinion of the SLRO.   (Doc. 1)

B.  Background Information

The underlying facts of this case, up to and including the due process hearing and IHO decision, are thoroughly detailed in Parent's August 15, 2005 state level brief, under *Relevant Facts*, with comprehensive discussion of Background Information, Due Process Requests, the MFE process, the District's Eligibility Determination, and the Due Process Hearing.  R. (1)(f), p. 2-7.  For the sake of economy, Parent will not repeat that information here, but does direct the Court's attention to that document for review of those essential facts.  *Id.*

C.  State Level Review

SLRO Findings Regarding Eligibility

In an appeal from the decision of an IHO to the state educational agency, the SLRO shall, among other things, conduct an impartial examination of the entire record and make an "independent" decision upon completion of the examination.  34 C.F.R. 300.510(b)(2)(i)(v), consistent with O.A.C. 3301-51-08(H)(3)(a)(e).  In other words, the SLRO must conduct a *de novo* review of the entire record.

In her August 29, 2005 decision, the SLRO states:

> In conclusion, the student is not eligible under the IDEA for special education services due to an other health impairment, the parents are not eligible for reimbursement for their

independent educational evaluation and the order to the district to implement a 504 Plan is set aside.  R. (1)(c)

As an initial matter, the SLRO made several findings of fact inconsistent with the record.  For example, the SLRO incorrectly stated:

> Petitioners argue that once the IHO found the child to be OHI, he was thereby eligible for special education services.  R. (1)(c), p. 16

Actually, as an "initial observation" in a footnote, Parents' brief simply pointed out the logical inconsistency of the IHO's determination of ineligibility with his identification of Student as OHI.  R. (1)(f), p. 9 FN 4.  What Parents had <u>argued</u> was that the IHO "applied an incorrect standard of proof" regarding determination of Student's eligibility, misinterpreted caselaw in support of this erroneous conclusion, and "failed to consider overwhelming evidence regarding the nature of Student's disabilities and the adverse impact of these disabilities on his educational performance".  (4)(f), p. 8-10.

With no detailed analysis, the SLRO simply states that her  ". . . review of the record supports a finding that the student was properly found not to be OHI impaired".  R. (1)(c), p. 17.  In support, the SLRO made a finding that Parents' expert:

> . . . did not . . . have enough data to conclusively establish . . . the requirements of the OHI regulation, whether [Student] had an 'alertness [difficulty], including a heightened alertness to environmental stimuli, that results in limited alertness with respect to his educational environment'".  R. (1)(c), p. 17.

The SLRO's finding of fact in this regard, however, conflicts with the testimony of Parents' expert:

> . . . [Student's] short-term auditory attentional memory was below average and he tested at the tenth percentile R. (4)(e), p. 21.
>
> . . . basically what I noticed clinically with him is he did seem subject to cognitive fatigue and, again, that would be sort of a

> clinical observation that . . . just the effort required to maintain
> focus over a period of time was difficult for him. *Id.*, p. 24

> I think his ability to form concepts, to generate ideas and to
> problem solve . . . in the verbal area . . . [was] below average
> ability. *Id.*, p. 25

> In addition I administered the . . . <u>integrated visual and auditory</u>
> <u>continuous performance test</u> . . . this test gives you an average
> score of 100 points . . . <u>On the attention quotient</u>, which is a
> combined score of auditory and visual processing, <u>[Student]</u>
> <u>achieved a standard score of 63, which is at the first percentile</u>.
> That is considered <u>a severely impaired range of functioning</u>.
> *Id.* p. 25-26 (emphasis added). [5]

Moreover, the SLRO concluded, citing "substantial" but unspecified "evidence", that

Student's academic difficulties were largely of his own making, concluding that " . . . the

<u>main problem</u> he had was a lack of consistent effort and lack of follow-through on things

he had control over, such as wearing his glasses to class."  R. (1)(c), p. 18.  Nowhere in

statute or regulations, however, is "motivation" included in the eligibility criteria under

the IDEA.

Finally, the SLRO failed to analyze or address the legal arguments raised by

Parents concerning the use of an improper standard in denying Student's eligibility for

IDEA services.  The District's witnesses testified that eligibility for special education

services depends on a <u>very</u> significant adverse impact, demonstrated by consistently

failing grades and not passing from grade to grade. R. (4)(e), p. 91-93, 97, 109.  See also

R. (1)(f), p. 16-18.  The SLRO provides no discussion and makes no finding regarding

Parent's argument that passing grades cannot be the sole test of adverse impact on

educational performance.   Neither did the SLRO comment on the IHO's serious

misapplication of *Greenland School District v. Amy N.* 358 F3d 150, 185 Ed. Law Rep.

73, 1st Cir. (N.H), Feb 23, 2004, erroneously cited in support of the proposition that a

---

[5] See also R. (1)(f), p. 13.

child with ADD/ADHD who maintains average grades is not eligible for IDEA services. (4)(a), 13-14; (1)(f), p. 10-11.  The SLRO simply affirmed the IHO's decision in this regard and ignored, dismissed, or discounted substantial evidence regarding the impact of Student's ADD/ADHD, and other health problems, on his educational performance.

### SLRO Findings Regarding Student's Independent Educational Evaluation

The SLRO initially agreed with Parents that the IHO used an improper basis for denying them reimbursement for the cost of Student's independent educational evaluation "IEE".  R. (1)(c), p. 19.  On the other hand, she then independently denied reimbursement on the reasoning that Parents had failed to "request an IEE at public expense". *Id*.  In addition, although the SLRO was correct in finding that a District official informed Parents of their right to obtain an IEE, she then based her conclusion that Parents are not entitled to reimbursement on the fact that the District official "did not mention that the district would pay for it".  R. (1)(c), p. 19.  The SLRO cites no authority for her conclusion in this regard.  Moreover, the SLRO is completely mistaken in her conclusion that Parents failed to direct their request for an IEE at public expense to the District.  R. (1)(c), p. 19.  The SLRO first accurately stated that Parents' request for an IEE was included "in Petitioners second amended request", but then inaccurately contended that ". . . this request was addressed to the IHO, not the district." *Id*.  The record speaks for itself and clearly shows the request for an IEE at public expense was addressed directly to Mr. Mike Eaglowski, Superintendent of the District.  R. (2)(c)  In any event, neither 20 U.S.C. 1415(b)(1) nor R.C. 3323.01 *et seq*. and their implementing regulations at 34

C.F.R. 300.502 or O.A.C. 3301:51-05(F) describe the form or manner in which a "request" for an IEE must be made.

<u>SLRO Findings Regarding the Authority of the Impartial Hearing Officer</u>

Finally, the SLRO determined "[t]here was no showing that [Student] was disabled or that he was discriminated against in any way". R. (1)(c), p. 20. From this conclusion, in addition to the SLRO's finding that Parents had not requested a 504 Plan, the SLRO concluded that the "IHO had no basis for ordering a 504 plan as a remedy. *Id.*

In each of these findings, the SLRO committed serious errors of law, as well as of fact, and as such, her decision must be reversed as a matter of law.

## III. LAW AND ARGUMENTS

A. <u>Standard of Review</u>

The purpose of the Individuals with Disabilities Education Act 20 U.S.C. 1400 *et seq.*, is to ensure that all children with disabilities are provided a free appropriate public education that includes "special education" to meet the student's "unique needs" and "prepares" them for employment and independent living. See 20 U.S.C. 1400(d)(1)(2); see also *Burilovich v. Board Of Educ. Lincoln Consol. Schools,* 208 F.3d 560, 565 (C.A.6 (Mich.) 2000), cert. denied, 531 U.S. 957, 121 S.Ct. 380, 148 L.Ed.2d 293 (2000).[6] While the IDEA provides no specific standard of review in the appeal of a state administrative decision under 20 U.S.C. 1415(i)(2), after having received the records of

---

[6] See also 20 U.S.C. 1400 et seq. 2004, amended December 2004.

the administrative proceedings, the District Court shall base its opinion on a "preponderance" of the evidence. 20 U.S.C. 1415(i)(2)(C). The Supreme Court has directed district courts to utilize a two-part analysis when reviewing a complaint under Section 1415, first by determining "whether the state has complied with the procedures set forth" in the statute and, secondly, by analyzing whether or not the student's IEP is "reasonably calculated" to provide educational benefit. *Burilovich* at 565, citing *Board of Educ. v. Rowley,* 458 U.S. 176, 206-207, 102 S.Ct. 3034 (1982). Generally, the reviewing court is required to give "due weight" to the state administrative proceedings. When the matter concerns a review of a question of law, however, educational expertise is not required. *Burilovich* at 566-567. In the instant case, because the Student has been denied eligibility, no IEP exists. Therefore, the focus of this Court's attention should be on the first step in the *Rowley* analysis only, with little or no weight given to the state administrative proceedings.

### No Deference Is Due IHO or SLRO Opinions On Matters of Statutory Interpretation Where Educational Expertise Is Not Relevant

The weight typically due administrative determinations in an IDEA appeal is offset where the court reviews strict procedural compliance, questions statutory interpretation, or when the administrative opinion is unclear, inaccurate, or injudicious. The Sixth Circuit requires a "modified *de novo* review" of procedural and substantive matters, giving " 'due weight' to the state administrative proceedings". *Burilovich* at 565, citing *Renner v. Board of Educ.,* 185 F.3d 635, 641 (6th Cir. 1999), *Metropolitan Bd. Of Pub. Educ. v. Guest,* 193 F.3d 457, 463-64 (6th Cir. 1999), and *Rowley* at 206. The Sixth Circuit has also held that a court cannot adopt a state administrative determination

uncritically, but must make an "independent re-examination of the evidence". *Burilovich* at 566, citing *Doe v. Metropolitan Nashville Public Schools,* 133 F.3d 384, 386-87 (6th Cir.), *cert. denied,* 525 U.S. 813, 119 S.Ct. 47, (1998)

> We have also indicated that the <u>weight due will vary,</u> <u>depending on</u> whether the court is reviewing procedural or substantive matters and <u>whether educational expertise is</u> <u>essential to the administrative findings</u>. *Id* at 555-556. (emphasis added).

Because the court is bound to ensure "strict" adherence to the IDEA's procedural requirements, a court may give less deference to the administrative proceedings when procedural requirements are not met. *Burilovich* at 566, citing *Dong v. Board of Educ.*, 197 F.3d 793, 800 (6th Cir.1999); See also *Doe v. Defendant I*, 898 F.2d 1186, 1190-91 (6th Cir.1990).

In any event, the amount of deference due a state's administrative proceedings is relative to exactly how "thorough and complete" the reviewing court finds the findings and opinion of the administrative officer. *Burilovich* at 566, FN1, citing *Adams v. Oregon,* 195 F.3d 1141, 145 (9th Cir. 1999) (bestowing increased deference upon the hearing officer where her findings are thorough and complete). See also: *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994) (deference given when findings of hearing officer are thorough and complete.)

In the present case, Parents ask this Court to review the state administrative record for errors in the interpretation of IDEA's eligibility requirements for students with disabilities. As this review does not involve substantive issues involving methodology or development of an IEP, it is not a matter requiring educational expertise.

> The focus of the Supreme Court and this court upon the presumed educational expertise of state and local agencies leads to the conclusion that <u>the amount of weight due</u> depends upon whether such expertise is relevant to the decision-making process. As a result, less weight is due to an agency's determinations on matters for which educational expertise is not relevant, so that a federal court would be just as well suited to evaluate the situation. *Burilovich* at 567. (emphasis added).

The matter now before the court concerns review of errors in the legal interpretation and application of the statutorily defined terms establishing criteria for eligibility under the Act. In cases concerning eligibility for special education, more than one court has held the rule of deference does not apply in matters of statutory construction.

> <u>In this matter of statutory interpretation, the district court was as well-positioned as the state administrative officials to determine . . . eligibility</u>. As the underlying facts . . . . were not in dispute, but only the legal conclusions to be drawn from those facts, the state administrative officials were in no better position than the district court to make conclusions with respect to [Student's] statutory eligibility based on the record. *Muller v. Committee on Special Educ,* 145 F.3d 95, 102 (2d Cir. 1998) (emphasis added).

> Consequently, the <u>"due weight"</u> we ordinarily must give to the state administrative proceedings <u>is not implicated</u> with respect to that conclusion, <u>because it concerns an issue of law; namely, the proper interpretation of the federal statute and its requirements</u>. *Mrs. B. v. Milford Bd. Of Educ.,* 103 F.3d 1114, 1122 (2d Cir. 1997) (emphasis added).

> . . . whether or not a child is entitled to receive services under IDEA is statutorily defined and not a matter of educational policy. <u>While school authorities are better situated than courts to determine . . . educational practices . . . they may not choose to exclude qualified children from receiving IDEA services</u> *Yankton Sch. Dist. v. Schramm,* 93 F.3d 1369, 1376 FN 9 (8th Cir. 1996)

> Where, the issue before the Court is "whether the school district properly classified [the student] as an individual with or without a disability in the first instance," the Court is *not* bound by the rule of deference. *Corchado v. Bd. Of Educ.,* 86 F.Supp

2d 168, 172 (W.D.N.Y. 2000), citing *Muller v. Committee on Special Educ., 145 F.3d 95, 102 (2d Cir. 1998).*

While the Sixth Circuit has not definitively resolved the issue, the district court of Maine has provided a well-reasoned and thorough analysis of the IDEA's statutory use of terms regarding eligibility for special education and related services in *Mr. and Mrs. I v. Maine School Administrative District 55*, ---F.Supp.2d ---, 2006 WL 224318 (D. Me. 2006) attached.

> . . . where the issue was the proper construction of the statutory term "education," and the facts relating to the child's needs were undisputed, the First Circuit rejected the argument that the trial court gave insufficient deference to the agency: "[t]he construction of a statutory term traditionally falls within the scope of judicial review. *Mr. and Mrs. I.*, at *6, citing *Abrahamson v. Hershman*, 701 F.2d 223, 231 (1st Cir. 1983).
>
> The Court must be free to interpret the terms used in the statute so as to ensure "compliance" with the IDEA. *Id.*, citing *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 890 n.6 (1984) (judicial review of legal questions is appropriate.).

Therefore, as in the cases cited above, in the instant case the court is not bound by the rule of deference and must make its own determination regarding whether Student is eligible for services under the IDEA as a child with an OHI identification because this is a question of law involving statutory interpretation and does not involve substantive questions of educational methodology.

B.     Both The IHO And SLRO Erred As A Matter Of Law In Determining Student Was Not A Child With A Disability In Need Of Special Education.

The keystone issue in the present case concerns the administrative decisions of both IHO and SLRO finding Student ineligible for special education and related services

as a child with a disability with an "other health impairment" ("OHI"), as that term is defined in federal and Ohio law. Parents argue that both hearing officers applied legal standards for eligibility found in neither Ohio nor federal law, nor in any of the case law developed on these issues. Parents therefore respectfully request the court to thoroughly review these decisions for errors of law, interpret the IDEA in accordance with Congressional intent in enacting the legislation, and reverse both administrative decisions on the issue of eligibility. The remaining issues concerning denial of reimbursement for the cost of Student's independent educational evaluation ("IEE"), and the broader issue of the IHO's authority to order specific relief under Section 504, are addressed separately below.

Statutory and Regulatory Framework for Eligibility Under the IDEA and Ohio Law

In order to be eligible for services under the IDEA and Ohio's parallel legislation, the threshold requirement is to be identified as a "child with a disability". 20 U.S.C. 1401(3) and R.C. 3323.01(A). The term "child with a disability" requires that a child have one or more identified impairments and, because of that impairment, to be "in need of special education". *Id.* Federal and Ohio statutes specify a variety of impairments that qualify a child for such services. The qualifying impairment at issue in this case involves the category of "other health impairments" or "OHI", which is not specifically defined in either federal or Ohio statutes. The implementing regulations of the IDEA and R.C. 3323.01 *et seq.* [7], however, do provide definitions of the term.

The definitions of OHI in 34 C.F.R. part 300 and O.A.C. 3301:51 *et seq.* are virtually identical.

_____

[7] R.C. 3323.01(A) uses the term "handicapped child", while the term in the IDEA is "child with a disability".

Other health impairment means having <u>limited strength, vitality or alertness, including a heightened alertness to environmental stimuli,</u> that results in limited alertness with respect to the educational environment, that is <u>due to chronic or acute health problems such as Asthma, attention deficit disorder or attention deficit hyperactivity disorder,</u> diabetes, epilepsy, a heart condition, hemophilia, lead poisoning, leukemia, nephritis, rheumatic fever, and sickle cell anemia; <u>and adversely affects a child's educational performance.</u> See 34 C.F.R. 300.7(c)(9), O.A.C. 3301:51-01(F)(3)(i). (emphasis added).

In addition to establishing that a child has one or more of the listed disabilities, and the need for special education, the regulations impose the additional requirement, not found in the statute, that the impairment "adversely affects the child's educational performance". See e.g. 34 C.F.R. 300.7 (c)(9)(ii)  Neither statutes nor implementing regulations define the additional terms "adversely affects" and "educational performance".  However, in the instant case both IHO and SLRO apply an undefined quantification to the term and require that any adverse impact rise to some level of significant or substantial.  For example, while not disputing Student's ADHD diagnosis, the IHO states he found ". . . no credible demonstration that [Student's] ADHD had an adverse affect on his educational performance".  (4)(a), p. 13, 15  At the same time, the IHO had reframed the question of "adverse affect", asking not whether or not Student's ADHD, and other medical problems, adversely impacted his educational performance, but how severe the adverse impact needed to be:

It is around this issue, <u>to what extent does one have to be adversely affected in their educational performance to qualify as OHI</u> that the [due process] hearing proceed[ed]. R. (4)(a), p. 4.  See also discussion at R. (1)(f), p. 14-15.

In addition, both IHO and SLRO applied an improper standard to the term "educational performance" by focusing on grades alone as the litmus test for eligibility rather than the expansive use of the term found in Ohio regulations, which include consideration of non-academic areas of socialization and emotional status. The IHO concluded that "[i]t does not appear to be reasonable to suggest that the [Student's] performance at a level at average demonstrates adverse affect when the child has an average ability". R. (4)(a), p. 14. Once again, the IHO relied for conclusions of law upon statements by several District officials that "passing" grades, and passing from grade to grade was proof of no adverse impact on educational performance. *Id.* As many courts have affirmed, these are not the eligibility standards contemplated by the law. Moreover, the SLRO applied her own motivational standard to the eligibility determination, a measure clearly not included in statutory or regulatory eligibility standards. R. (1)(c), p. 11, 18.

As mentioned, neither federal nor Ohio statutes define the terms "adversely affects" or "educational performance". Instead, it is largely the responsibility of each state to give meaning to these terms, in particular when such state provisions exceed the federal minimum. See *J.D. ex rel J.D. v. Pawlet School Dist*., 224 F.3d 60, 66 (2d Circ. 2000). In addition, in providing FAPE to its disabled students, each state must adopt standards that meet the requirements of the statute. See 20 U.S.C.1401(a)(3). In adopting its regulations implementing the IDEA, Ohio has not chosen to define the relevant terms that are crucial to this case. Ohio does, however, define some terms the Court will find useful in deciding the issues.

<u>Educational Performance</u>

Ohio defines neither "education" nor "educational performance". Free, appropriate public education ("FAPE"), however, is defined at R.C. 3323.01(D). O.A.C. 3301:51-01(R) defines the term as follows:

> Free appropriate public education; or "FAPE" means special education and related services that:
> (1) Are provided at public expense, under public supervision and direction, and without charge;
> (2) Meet the rules for the education of children with disabilities as adopted by the State Board of Education;
> (3) Include preschool, elementary school, or secondary school education in the State; and
> (4) Are provided in conformity with an individualized education program.

In addition, O.A.C. 3301:51-02 elaborates on the requirements for a FAPE, and mandates various time requirements for providing FAPE to students with disabilities, including students who may be suspended or expelled. Particularly relevant to this case is subsection (A)(3):

> Each school district shall make FAPE available to each child with a disability who needs special education and related services <u>even though the child is advancing from grade to grade.</u> (emphasis added).

Ohio clearly does not require students with disabilities to fail in their academic subjects, or fail to be promoted from grade to grade, in order to be eligible for IDEA services. In this case, however, both IHO and SLRO repeatedly defer to the District's insistence that "educational performance" for the purposes of eligibility is limited to academic grades and passing from grade to grade, and excludes manifestations of a child's disability adversely affecting social performance and/or emotional affect in the educational environment. R. (1)(c), p. 11; (4)(a), p 14. This position is simply wrong.

Ohio has chosen to give a very broad meaning to the meaning of the term "education" for all students, including those with disabilities, and has incorporated into the regulations the requirement that the educational milieu for a child with a disability be "developmentally" appropriate across a broad spectrum of educational environments. O.A.C. 3301:51-01(L) provides:

> "Developmentally appropriate" means curriculum, instruction, environments, and activities that reflect the <u>cognitive, social, and emotional level of the learner</u>, which are age appropriate to meet the needs of a particular chronological age span; and are appropriate to address the unique abilities or characteristics of a learner or group, including learners with disabilities; unique ethnic and/or cultural characteristics, and unique life experience. (emphasis added).

Obviously, Ohio has deemed it necessary to include <u>all aspects</u> of a child's life in evaluating his or her educational performance. Contrary to the urging of the District, evaluation of educational performance cannot be limited to selected academic measures.

In this case, both the IHO and SLRO agree that Student has a disability diagnosis of ADD/ADHD, as well as Asthma, and that he has educational problems. R. (4)(a), p. 13, (1)(c), p. 18. The SLRO in particular uncritically adopted the District's rationalization that the majority of Student's problems are of his own making, attributing his academic difficulties primarily to his own lack of motivation, lack of effort, failure to turn in assignments, failure to show up for tests, failure to wear his glasses, etc. R. (1)(c) p. 18. In contrast, neither IHO nor SLRO provide any analysis of the substantial documentary evidence and testimony in the record demonstrating the adverse impact of Student's disabilities on his educational performance. For a brief summary of these facts, the Court is directed to Parent's SLRO appeal brief. R. (1)(f), p. 12-19, 22-25. Neither the IHO nor the SLRO gave much, if any, weight to this evidence, or provided any

analysis or rationale for disregarding relevant facts concerning adverse impact on educational performance. Both hearing officers seem to accept without question the District's expectation that the Student needed to demonstrate some undefined level of seriously inferior performance in order to be eligible for IDEA Services. For example, School Psychologist Donna Parlette testified that, in her opinion, a child would have had to fail completely and consistently, and be "very adversely affected" before being eligible for IDEA services. R. (4)(e), p. 91-93, 109. However, as more than one court has affirmed, satisfactory academic achievement "should not and cannot be the litmus test for eligibility under the IDEA". *Corchado v. Board of Educ.,* 86 /F.Supp.2d 168, 176 (W.D.N.Y. 2000) See also *Muller on Behalf of Muller v. Committee on Special Educ. Of East Islip Union Free School District*, 145 F.3d 95 (C.A. 2) May 22, 1998, *Mr. and Mrs. I v. Maine School Administrative District 55*, ---F.Supp.2d ---, 2006 WL 224318 (D. Me. 2006) attached. See also 3301: 51-2 (a)(3)

<u>Student Needs Special Education to Address His Unique Needs That Arise From His Disability</u>

As the statutes and regulations implementing the IDEA mandate, in addition to identification of a particular disability, a student must also demonstrate the <u>need</u> for special education. See 20 U.S.C. 1401(3); R.C. 3323.01(A). Although neither the SLRO nor IHO addressed this issue, Parents strongly urge the court to review this aspect of eligibility, as Student has demonstrated a compelling need for such services. For example, the IHO himself considered Student to have an "other health impairment" and, due to his academic struggle and the limitations presented by this disability, ordered the District to develop a Section 504 Plan to provide services from a list of recommendations

included in the District's MFE.  R. (4)(a), p. 15-16; R. (3), Ex.  26.  These services include not only modifications and/or accommodations, but incorporate "special education" as that term is used in the IDEA and Ohio law.  Ohio Regulations implementing the IDEA define special education as follows:

(MM) "Special education" means <u>specially designed instruction</u>, at no cost to the parents, <u>to meet the unique needs of a child with a disability</u>, including instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings, and instruction in physical education.

(1) The term includes each of the following, if the services consist of specially designed instruction at no cost to the parents to meet the unique needs of a child with a disability.
(a) Speech-language pathology services, or any other related service, if the service is considered special education rather than a related service;
(b) Travel training; and
(c) Vocational education.
(2) The terms in this definition are defined as follows:
(a) "At no cost" means that all specially-designed instruction is provided without charge, but does not preclude incidental fees that are normally charged to nondisabled students or their parents as a part of the regular education program.
(b) "Physical education" means the development of
(i) Physical and motor fitness;
(ii) Fundamental motor skills and patterns; and
(iii) Skills in aquatics, dance, and individual and group games <u>and sports</u> (including intramural and lifetime sports); and
(iv) Includes special physical education, adapted physical education, movement education, and motor development.
(c) "<u>Specially designed instruction</u>" means adapting, as appropriate, to the needs of an eligible child under this part, the content, methodology or delivery of instruction
(i) To address the unique needs of the child that result from the child's disability; and
(ii) To ensure access of the child to the general curriculum, so that he or she can meet the educational standards adopted by the State Board of Education that apply to all children…" O.A.C. 3301:51-01(MM); 34 C.F.R. 300.26 identical. (emphasis added).

The relevant portions of this regulation make it clear that special education is "specially designed instruction" to meet the child's "unique needs". Under the ODE definition, any alteration to the "methodology" or "delivery" of instruction to meet the unique needs of the child is considered special education. O.A.C. 3301:51-01(MM)(c), *supra*. The District's own evaluation identified Student's need for a variety of special education services that the IHO ordered be included in a Section 504 Plan that was to have been implemented by the time school began in September of 2004. The "recommended" services included:

> -The student is to wear his glasses
> -Maintain home-school communication about schoolwork completion and tests due
> -**Arrangements will be made to allow the student to follow up on assignments he doesn't understand**
> -Preferential seating
> -**The teacher is to interact frequently with student in order to maintain involvement is going [sic] on in the class room.**
> -The student to time his assignments in order to monitor how long it takes to do the work and to accept the time limits
> -Reading for main ideas
> -**Directions to be provided in a variety of ways to increase the probability of understanding**
> -**Classroom materials may need to be rephrased, restated, and clarified in order to help the student to understand the materials be [sic] in presented**.
> R. (4)(a), p. 15.

Some of the services included in these "recommendations", which are listed above in bold, clearly meet the definition of special education under Ohio law.

In addition, the record below includes uncontroverted testimony by Parents' expert witness, Maureen Garner, Ph.D., establishing Student is in need of "educational interventions" to address his educational problems in areas of attention, organization,

behavior, and impulsivity. R. (3) Ex. 29, p. 5-6; (4)(e), p. 30-31. At the due process hearing, Parents presented substantial, reliable and probative evidence, most of which was never disputed by the District. There is no disagreement among the parties and hearing officers that Student has disability diagnoses of ADD/ADHD and Asthma. R. (4)(a), p. 13, (1)(c), p. 18. In addition, despite the IHO's observation that there was "little in the way of a baseline" from which to measure the "extent" of adverse affect on Student's educational performance, it was undisputed that Student's educational performance during his early elementary school years was above average, and only began to decline between fifth and sixth grade when expectations for independent production and organization also began to increase. R. (1)(f), p. 18-19. On one hand the SLRO clearly acknowledged, "[t]here was some evidence that the ADD/ADHD may have affected [Student's] alertness to environmental stimuli, and . . . may have some adverse impact on his education". R. (1)(c), p. 18 On the other hand, she cites "substantial" but unspecified "evidence" to conclude that Student was not eligible for services under an OHI identification. *Id.*

In fact, the only dispute here involves the degree to which Student's problems have interfered with his education performance. However, the relative "degree" of adverse impact, particularly concerning grades, is not and cannot be the test for eligibility. Neither federal nor Ohio law includes any stated quantification for a requisite level of adverse affect on educational performance for eligibility. See 34 C.F.R. 300.7(c)(9), O.A.C. 3301:51-01(F)(3)(i). See also *Mr. and Mrs. I*, *supra.*

The District seems to infer that "adverse affect on educational performance" is a term of art, which they are free to interpret without any special administrative or statutory

definition, or other legislative authority. It is not reasonable to expect the court to sanction the arbitrary imposition of standards not found in the law. Neither should the court give deference to administrative decisions where there is clear error in this area of statutory interpretation. Neither need this court defer to the "educational expertise" of the administrative decisions below, as it is amply "equipped" to provide the necessary statutory interpretation for eligibility under the IDEA. See *Burilovich* at 565; *Muller by Muller,* at 102; *Corchado* at 172; *Mr. and Mrs. I.*, at *6.

C.    Both IHO and SLRO Erred As A Matter Of Law In Denying Parents Reimbursement for the Cost of Their Independent Educational Evaluation.

The SLRO first agreed with Parents that the IHO erred by "stating an improper basis" for his denial of reimbursement for the IEE. R. (1)(c), p. 19. However, she then denied Parents reimbursement for the cost of Student's IEE by relying on the erroneous conclusion that, "[Parents] are not entitled to reimbursement for the IEE because they did not request an IEE at public expense". *Id.* The SLRO incorrectly claimed that the Parents' request for reimbursement was "addressed to the IHO, not the district", and inaccurately concluded that the IEE was obtained solely for the purposes of the due process hearing. *Id.* at p. 12.

In the first place, Parents' request for reimbursement for the IEE was made on May 19, 2005, in the Second Amended Request, which was addressed directly to the District's Superintendent, Mr. Mike Eaglowski, with service to District's counsel, Mr. McCarthy, and the IHO, Mr. Rohrbacher. See Second Amended Request, R. (2) Ex. C. Significantly, Parents' Second Amended Request also states in pertinent part:

> Petitioners made this request [following] . . . the May 18, 2005 disclosure conference, with the knowledge and approval of

> counsel for the parties, and <u>in the presence of a representative of the Respondent school district</u>. R. (2), Ex. (C), p. 1.

In addition, even if Parents' request for the IEE was made in association with the due process, as well as in response to their expressed disagreement with the District's MFE, that does not provide a basis for denying reimbursement. The SLRO's opinion denying reimbursement for the IEE is also based on a standard not supported by law. The rules governing reimbursement for the cost of an IEE are found at both 34 C.F.R. 300.502 and O.A.C. 3301:51-05(F), which are virtually identical with no distinguishable differences of note. In brief, the rules state that a parent of a child with a disability:

> . . . has the right to an independent educational evaluation at public expense <u>if the parent disagrees with an evaluation obtained by the school district</u>. O.A.C. 3301:51-05(F)(3). (emphasis added).

The SLRO supports her denial for reimbursement by reference to the "enabling regulations of IDEA", without reference to any particular section, and not inaccurately states that a parent must first request an IEE at public expense in order to be entitled to reimbursement. R. (1)(c), p. 19. However, the section upon which the SLRO apparently relies, Subparagraph (2) of 3301:51-05(F), merely states that:

> Each school district shall provide to parents, upon request for <u>an independent educational evaluation</u>, information about where an independent educational evaluation may be obtained and the district's criteria described in paragraph (F)(8) of this rule. (emphasis added)

Similarly, 34 C.F.R. 300.502 (b)(2) addresses the District's requirements when a parent requests an IEE at public expense.

> <u>If a parent requests an independent educational evaluation</u> at public expense, the public agency must, without unnecessary delay, either— . . .

When a parent requests an independent evaluation at public expense, the District must provide the IEE at public expense or request their own due process hearing either to demonstrate their own evaluation is appropriate or that the parent's evaluation does not meet agency criteria. 34 C.F.R. 300.502 (b)(2)(i)(ii). The rules do not detail or specify the manner in which a parent's request for the IEE is to be made. The SLRO acknowledged that the District's Director of Special Education informed Student's mother of their right to obtain an independent evaluation if she disagreed with the District's MFE determination. R. (1)(c), p. 19. It is uncontroverted that school officials informed Parent at the end of the April 18, 2005 MFE meeting of her right to an IEE. R. (4)(d), p. 87; (4)(e), p. 103. The record is also clear that Student's mother was displeased and extremely disappointed with the results of the District's MFE. In fact, Parent was so upset that she left the final MFE meeting in an emotional turmoil, after Student's eligibility was again denied. (4)(d), p. 87. The SLRO concluded from Parent's behavior in leaving the April 18, 2005 MFE meeting prematurely, that Student's Parent "did not seem interested" in the District's suggestions for "some interventions to help [Student] improve his grades". R. (1)(c), p. 19.

Another problematic finding concerns the SLRO's conclusion that:

> Although the director of special education mentioned to the mother that she could obtain an independent evaluation if she did not agree with the district's, <u>she did not mention that the district would pay for it</u>. Had [Parent] requested an IEE at public expense, that would have triggered certain due process procedures, which might have let to an order of reimbursement. R. (1)(c), p. 19.

If true, this suggests the District violated Parent's procedural safeguards in violation of 34 C.F.R. 300.503, which requires prior written notice to Parent whenever the District

"refuses to initiate or change the identification, evaluation, or educational placement of the child". This notice must include a "full explanation" of procedural safeguards relating to the parent's right to obtain an independent evaluation at public expense. 34 C.F.R. 300.504 (b)(1). See also Ohio's parallel regulations O.A.C. 3301:51-05 (C)(1)(ii), (D)(2)(a).

As the facts demonstrate, Parents met all criteria required by federal and Ohio law for "requesting" an IEE. It is uncontested that Parents disagreed with the District's evaluation. R (4)(d), p. 87. Parents requested an IEE at public expense in their Second Amended Request, which they directed to the District's Superintendent, with copies provided to both the District's counsel and the IHO. R. (2), Ex. C. The District never requested a due process hearing to support their own evaluation or to demonstrate that Parents' IEE failed to meet agency criteria as required by 34 C.F.R. 300.502 (b)(2)(i)(ii). The District informed Student's mother of her right to obtain an IEE, but failed to inform her that this right included having the IEE provided at public expense. R. (1)(c), p. 19. However, it is just not logical to conclude that the District's failure to provide this information relieves them of their responsibility under the law. Thus, Parents have a right to be reimbursed for the cost of the IEE pursuant to the statutes, regulations, and by case law. See *Hudson v. Wilson,* 828 F.2d 1959, 1065 (4th Cir. 1987).

Moreover, in the event this court reverses the administrative decisions finding Student ineligible for special education as a child with an other health impairment, Parents will be entitled to reimbursement for all of their costs, including the costs of the IEE and their expert witness. See *Gross ex rel. Gross v. Perrysburg Exemted Village Sch. Dist.* 306 F.Supp.2d 726, 730 (N.D. Ohio 2004)

D.    The SLRO Erred In Vacating The IHO's Decision Requiring The District To Develop A Section 504 Plan

Finally, the SLRO again erred as a matter of law in her decision to "set aside" the IHO's decision ordering school officials to develop a Section 504 Plan. R. (1)(c), p. 20. Reversing the IHO in this regard, the SLRO wrote:

> [t]here was no showing that [Student] was disabled or that he was discriminated against in any way [therefore]. . . the IHO had no basis for ordering a 504 plan as a remedy. *Id.*

Leaving aside the question of whether or not Student was discriminated against, the SLRO is absolutely wrong in concluding that Student is not disabled. The SLRO concurred with the IHO that Student suffers from ADD/ADHD R. (1)(c), p. 18; R. (4)(a), p. 13. Moreover, she does not dispute evidence that Student's disabilities have resulted in educational problems. *Id.*

To establish a disability under Section 504, a child must have a physical or mental impairment that significantly limits one or more major life activities. Everyone, including teachers and other District officials, agreed that Cody's ADD/ADHD resulted in impulsivity, non-aggressive behavior problems, lack of attention, and lack of organization. See Summary at R. (1)(f), p. 7. These symptoms affected Student's academic and educational performance. *Id.* at 11-12. For a child in elementary and secondary school, education and learning are major life activities. Thus, the SLRO erred in finding Student not to be disabled.

Next, the SLRO erred in determining that the IHO did not have the "authority" to order a Section 504 Plan as a remedy. 20 U.S.C. 1415 (i)(2)(C)(iii) allows a court "grant such relief as the court determines is appropriate". Parents suggest the IHO has at least

as much authority under the IDEA to fashion appropriate equitable relief as does the Court. In *Lions et al v. D.C. Board of Educ.*, 829 F.Supp. 414, (D.C. 1993), the District Court for the District of Columbia determined an IHO was authorized under the IDEA to require a school district to develop a Section 504 Plan, despite having found the child ineligible as OHI under the IDEA, based upon an IHO's broad discretion under the equitable powers conferred by 20 U.S.C. 1415(e)(2). *Id.* at 416. See also 20 U.S.C. 1415 (i)(2)

The *Lions* case is instructive here because it is similar in several ways to the instant case. The child in *Lions* had an ADD/ADHD diagnosis and contested the school district's failure to identify him as OHI under the IDEA. The District Court affirmed the IHO's decision finding him ineligible under the IDEA. However, it upheld the IHO's order requiring the school district to develop a Section 504 Plan. The *Lions* Court noted that the hearing officer's rationale for finding the student ineligible under IDEA included the fact he obtained average or superior grades, although his disability affected his social adjustment. *Id* at 418. In affirming the IHO's decision to require development of a Section 504 Plan, the court held that the IHO must have at least as much authority to grant relief as the federal court under 20 U.S.C. 1415(e)(2), which provides that the court shall base its decision upon the preponderance of evidence and grant the relief requested. *Id.* at 419. The essential difference between *Lions* and the present case is that *Lions* was decided prior to the 1997 amendments to the IDEA, which specifically incorporated ADD/ADHD into the definition of OHI.

Thus, even though the SLRO affirmed the IHO's decision that Student is not eligible for OHI services under the IDEA, this does not nullify the IHO's authority under 20 U.S.C. 1415(i)(2) to require the District to develop a Section 504 Plan.

## IV. CONCLUSION

For all of the reasons stated above, Parents and Student respectfully ask this Court to grant their Motion for Judgment on the Record and reverse the decision of the Ohio Department of Education finding Student ineligible for special education services under the IDEA and Ohio law, and denying Parents reimbursement for the cost of Student's independent educational evaluation. In the event the court affirms the SLRO decision regarding Student's eligibility under the IDEA, Parents then respectfully request that the SLRO's decision regarding the Section 504 Plan be reversed. Parents further ask that the District be required to participate in developing a transition plan for Student and to provide equitable relief in the form of appropriate compensatory education services to assist Student in transitioning to post-secondary education. Finally, Parents ask the Court to determine that they are the prevailing party in these proceedings and grant their request for attorneys' fees and costs, pursuant to the IDEA , 20 U.S.C. 1415(i)(3), as well as any other relief the court deems appropriate.

Respectfully submitted,


**/s/ Thomas J. Zraik**
Thomas J. Zraik (0023099)
5579 Monroe Street
Sylvania, Ohio 43560
Telephone: (419) 882-2559
Facsimile: (419) 882-1425

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Motion was electronically filed on this 3rd day of April 2006. Notice of filing will be sent to all parties by the operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**/s/ Thomas J. Zraik**
Thomas J. Zraik (0023099)
5579 Monroe Street
Sylvania, Ohio 43560
Telephone: (419) 882-2559
Facsimile: (419) 882-1425