IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

P.R. and B.R., for Themselves and as Next
    Friend of C.R.,

        Plaintiffs,                             Case No. 3:05CV7395

        v.                                    ORDER

Woodmore Local School District,

        Defendant.

This is a suit brought under the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400, *et seq*. Plaintiffs P.R. and B.R. (the parents) are the parents of C.R. (the student), who was formerly enrolled in the defendant Woodmore Local School District (the district). The parents allege, *inter alia*, that the district improperly denied their son special education services in violation of IDEA.

Jurisdiction exists under 28 U.S.C. § 1331.

Pending are the parties' counter-motions for summary judgment. For the following reasons, defendant's motion shall be granted in part and denied in part, and plaintiff's motion shall be denied.

**Background**

The student attended the district's public schools from kindergarten until his graduation from high school in June, 2006. He was an above average student through the fourth grade, but his academic performance began to decline that year. In 2000 he was placed, rather than promoted, into seventh grade.

As the student entered high school, he achieved primarily Cs and Ds, particularly in his core subjects. Those grades improved somewhat with increased study help from his mother and friends but such improvements faded when that help receded.

In the fall of the student's junior year, his mother, after discovering that her son continued to receive poor grades, requested "intervention help" for her son in chemistry. After the school informed her that no specific program existed to benefit him, she, on November 30, 2004, requested that the school "coordinate an intervention program." The school again responded that it had no such program and asked for clarification as to what she sought.

On December 9, 2004, the student's mother informed school personnel, in writing, that she was dissatisfied with their response and requested that they test her son for a learning disability. She did not receive an immediate response and, therefore, again contacted the school a month later to schedule a meeting concerning the testing.

That meeting occurred on January 12, 2005. The school's psychologist, the school's director of special education, and the student's mother discussed the child's academic performance, as well as a serious behavioral incident the previous day, for which the student received a ten-day suspension with "consideration for expulsion."[1]

Six days later, the student's parents, through counsel, requested an impartial due process hearing (DPH). They stated as grounds, specifically:

> 1. The district has and continues to deny the student a [free and appropriate public education (FAPE)];

---

[1] School officials caught the student urinating into a water cooler in the locker room.

> 2. The student has had academic difficulties throughout his enrollment in the district and the parents have repeatedly brought their concerns to the attention of school officials;
>
> 3. The student in the 2004-05 school year has experienced both academic and disciplinary problems including, but no limited to, receiving a 3-day suspension and associated ineligibility to participate in interscholastic sports competition;
>
> 4. The parents had requested that the district conduct a [multi-factor evaluation (MFE)] on December 9, 2004 because of student's academic and behavioral problems;
>
> 5. The district did not respond, leaving the parent to follow up in writing on January 7, 2005;
>
> 6. The district failed or refused to conduct an MFE or to provide the parents with the required prior notice describing in detail their reasons for refusing to conduct such an evaluation, in violation of 34 C.F.R. 300.503, 300.530-536; OAC 3301-51-05, and 3301-51-06;
>
> 7. On or about January 11, 2005, the district informed the parents that the student would be suspended for ten days and, in addition, that the district intended or was considering expelling the student for violating a school rule;
>
> 8. The district's action in suspending the student for ten days, and its intent to expel him for more than ten days, constitute a change in placement in violation of the IDEA and Ohio law, because [the student] is suspected of having a disability and is cloaked with the same rights and privileges as are provided to students who have been previously identified as being a child with a disability, and as such denies the student and the parents a FAPE. See 34 C.F.R. 300.357 and O.A.C. 3301-51-05(K).

State Level Review Officer's Decision, p. 7-8 (August 29, 2005).

As their due process remedy, the parents requested that the independent hearing officer (IHO), Matthew Rohrbacher, find that the suspension and any proposed expulsion violated the law and order the school to perform the MFE to determine whether the student was eligible for special education and/or related services.

The district subsequently held a hearing on the student's behavioral conduct. On January 20, 2005, the superintendent decided not to expel the student and reduced his suspension to seven days.

3

Four days later, the school psychologist confirmed to the parents that the district would conduct an initial evaluation of the student, at "parent and attorney request," noting that the parents had previously asked to have their child tested.

After serving his suspension, the student returned to school. At practice, the wrestling coach dismissed the student from the team. In response, the parents amended their DPH request, stating:

> 1. On or about January 20, 2005, the district held a hearing under O.R.C. 3313.66(B) to determine whether or not the student would be expelled from school due to an alleged violation of a school rule, alleged to have occurred on January 10, 2005. The superintendent made a decision to suspend the student for seven days, instead of expel him.
>
> 2. Upon his return to school on January 24, 2005, the student's wrestling coach informed him that he was being terminated from the wrestling team.
>
> 3. The coach refused to provide, either orally or in writing, his reason for terminating the student from the team.
>
> 4. The wrestling coach has treated students without disabilities, or suspected disabilities, differently than students such as the student, who has a suspected disability, in circumstances where such non-disabled students have violated school rules that are as serious, or more serious, than the behavior for which the student had received disciplinary action.
>
> 5. The wrestling coach's action in terminating the student from the wrestling is retaliatory and discriminatory in violation of the IDEA, Section 504 of the Rehabilitation Act of 1974, 29 U.S.C. 794, and O.R.C. 3323.01 and O.R.C. 4112.02(g).
>
> 6. Terminating the student from the wrestling team constitutes a change in the student's education program in violation of 34 C.F.R. 300.527, 300.514 and O.A.C. 3301-51-08 et. seq.

State Level Review Officer's Decision, *supra*, at 9.

The district performed the MFE on February 1, 2005. The evaluation included, but was not limited to, medical reports, psychoeducational testing, interviews with teachers, and analysis of the student's academic record.

4

Based on this information, school officials determined that the student was not learning disabled. His mother objected and requested that he be designated "other health impaired" (OHI) and that the district perform further testing.

The district consented. After conducting the testing, which included speech/language assessment, pragmatic language assessment, and pragmatic skills assessment, the school officials met with the student's mother and reaffirmed their consensus that the student was not eligible for special education services. Specifically, the school officials concluded that the difficulties he was having in school were not the result of any physical or psychological disabling condition, but were, rather, due to inadequate effort on his part.

The student's mother continued to dispute that conclusion and left the meeting before it ended. Prior to her departure, the district's special education director informed her that if she disagreed with the district's analysis, she could obtain her own independent educational evaluation (IEE), though he did not indicate that such evaluation was available at district expense.

The student's mother sought a second evaluation from Dr. Maureen Garner, a clinical psychologist. Dr. Garner diagnosed the student with a variety of ailments. She performed many of the same analyses that the district did, as well as tests of the student's executive functions, response control, and attentional control.

In contrast with the district's evaluation, Dr. Garner concluded that the student had significant disabilities, constituting an OHI impairment, that affected his academic performance. She recommended both medical treatment and certain accommodations from the student's school.

The parties subsequently addressed their contrasting positions to IHO Rohrbacher at the DPH on June 6-7, 2005. He affirmed the district's conclusion that the student was not entitled to special

education services as a child with an OHI disability. In addition, he stated that the parents were not entitled to reimbursement for Dr. Garner's IEE. Rohrbacher did, however, order the district to create certain educational accommodations under § 504 of the Rehabilitation Act.

Both parties appealed that decision to the state level review officer (SLRO). There, the SLRO affirmed the IHO's rejection of special education services and reimbursement. The SLRO, however, reversed the § 504 order, pointing out the paren' failure to have shown that the student had a disability, discrimination against their son, or a § 504 request on their part.

The plaintiffs appeal those determinations.

## Standard of Review

In IDEA cases, district courts engage in a "modified *de novo* review" of the administrative proceedings. *N.L. ex rel. Ms. C. v. Knox County Sch.*, 315 F.3d 688, 692 (6th Cir. 2003). Under that standard, the court makes a decision based on the preponderance of the evidence, reviewing issues of law *de novo*, while giving "due weight" to the IHO's and the SLRO's factual findings. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

The Sixth Circuit has interpreted "due weight" to mean that "administrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both." *Burilovich v. Bd. of Educ.*, 208 F.3d 560, 566 (6th Cir.2000); *see also Troy Sch. Dist. v. Boutsikaris*, 250 F. Supp. 2d 720, 729 (E.D.Mich. 2003). A court should, accordingly, "rely upon the hearing officer's presumed educational expertise, as long as the material facts underlying the officer's determination are not in dispute." *Burilovich*, 208 F.3d at 567 (citation omitted); *J.K. v. Fayette County Bd. of Educ.*, 2006

WL 224053, *3 (E.D.Ky.) ("Where educational expertise is relevant to the substantive findings and the decision below is reasonable, the court should defer to the administrative agency.").

Plaintiffs, however, contend that the dispositive issue of the student's eligibility for special education services is one of statutory construction to which, accordingly, reviewing courts give no deference. In support of that position, they rely on *Burilovich*, the seminal case in this circuit addressing review of IDEA administrative decisions. It states, in relevant part:

> The focus of the Supreme Court and this court upon the presumed educational expertise of state and local agencies leads to the conclusion that the amount of weight due depends upon whether such expertise is relevant to the decision-making process. As a result, less weight is due to an agency's determinations on matters for which educational expertise is not relevant, so that a federal court would be just as well suited to evaluate the situation. More weight is due to an agency's determinations on matters for which educational expertise would be relevant.

208 F.3d at 567.

Applying that reasoning here, the material inquiry is whether educational expertise is relevant to determining a student's eligibility for special education services under the statute. In the particular circumstances of this case, the dispositive IDEA eligibility issue is whether the student's disability "adversely affects [his] educational performance." O.A.C. §3301-51-01(F)(3)(i); *see also* 34 C.F.R. §300.77(c)(9); p. 8, *infra*. Because that analysis necessarily involves educational expertise, the statutorily mandated "due weight" deference is appropriate.[2]

---

[2]

In support of their contrary position, plaintiffs also cite decisions from other jurisdictions holding that IDEA eligibility decisions are not subject to deference. *See, e.g., Muller v. Comm. on Special Educ.*, 145 F.3d 95, 102 (2d Cir. 1998); *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1376 at n.9 (8th Cir. 1996). Those cases, however, did not involve the particular statutory language at issue in this case, which explicitly imports matters of educational expertise into the eligibility analysis. Their reasoning, accordingly, is not persuasive in these circumstances.

Indeed, at least one other case in this circuit has implicitly endorsed deference in IDEA eligibility

**Discussion**

The plaintiffs contend the SLRO erred in concluding that the: 1) student does not qualify for IDEA special education services because he does not have an OHI impairment; 2) parents are not entitled to reimbursement for their IEE expenses; and 3) student is ineligible for a §504 Rehabilitation Act plan.

**1. IDEA Special Education Services**

To qualify for IDEA special education services under the OHI provision, a student must: 1) have "limited strength, vitality or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that is due to chronic or acute health problems such as . . . attention deficit disorder or attention deficit hyperactive disorder;" and 2) that impairment must "adversely affect[] a child's educational performance." O.A.C. §3301-51-01(F)(3)(i); *see also* 34 C.F.R. §300.77(c)(9).

The parties agree that the student's impairments satisfied the first prong of this analysis. They differ, however, as to whether those disabilities "adversely affect[ed the] child's educational performance."

The SLRO determined that the student's condition did not meet that standard. In response, the plaintiffs principally assert that the SLRO: 1) applied an improper heightened eligibility

---

decisions like this one. *Morgan v. Chris L. By Mike L.*, 1997 WL 22714, *2 (6th Cir.). Other jurisdictions, moreover, have come to the same conclusion in similar circumstances. *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 663 (4th Cir. 1998) (affirming district court deference to administrative law judge's eligibility determination); *School for the Arts in Learning (SAIL) Public Charter School v. Johnson,* 2006 WL 1000337, *4 (D.D.C.) (D.D.C.,2006) (same); *Krista P. v. Manhattan Sch. Dist.*, 255 F.Supp.2d 873, 884 (N.D .Ill.2003)) (same). Defendants' contrary arguments, consequently, are without merit.

standard, requiring the parents to demonstrate that any adverse effect was "substantial or signficant;" and 2) improperly limited her evaluation of "educational performance" to the student's grades alone.

First, there is no evidence that the SLRO applied any improper heightened standard. In support of their argument, plaintiffs cite two passages from the IHO's report. In context, however, neither of these statements indicate the IHO applied the wrong standard.[3]

Moreover, even if these passages suggested error, they remain irrelevant. It is the SLRO's decision which is the subject of this appeal. Even if the IHO did apply the wrong standard, the material inquiry concerns the SLRO's decision. Because the plaintiffs cite nothing with respect to her analysis, and a thorough reading of the SLRO's decision confirms that absence of error, the plaintiffs' heightened standard objection fails.

Second, the plaintiffs' claim that the SLRO improperly circumscribed her analysis of the student's educational performance is also without merit. In her report, the SLRO considered the student's academic record, the school's MFE, the parent's IEE, the school psychologist's report, the reports of a number of the student's teachers, the report of the student's guidance counselor, the student's medical reports, and a bevy of educational tests.

---

[3] Specifically, the plaintiffs quote the IHO's statements that: 1) he found "no credible demonstration that [the student's] ADHD had an adverse affect on his educational performance;" and 2) "[i]t is around this issue, to what extent does one have to be adversely affected in their educational performance to qualify as OHI that the [hearing proceeded.]" Plaintiff's Initial Memorandum, at 15. The former is not indicative of any heightened standard. The latter, out of context, could suggest that the IHO used the improper standard. A thorough reading of his decision, however, confirms that this statement was one of procedural background and not substantive. More importantly, it is the SLRO's decision, not the IHO's which is the subject of this appeal. *See infra.*

The school district had concluded, based on this information, that the student's impairments did not adversely affect his educational performance. Instead, it determined that his difficulties in school were no different than those of many boys in their junior year of high school.

The parents disputed that determination, and submitted to both the IHO and the SLRO the report from Dr. Garner's that stated that the student was OHI disabled. The SLRO, however, noted that Dr. Garner did not "have enough data to conclusively establish the two additional requirements of the OHI regulation." She stated specifically that the doctor based her conclusions primarily on the student's mother's observations and that the doctor never interviewed any of the student's teachers, the student's guidance counselor, or any of the school's special education personnel. The SLRO, accordingly, found Dr. Garner's report unpersuasive and concluded that the student's impairments did not adversely affect his educational performance.

While the parents dispute much of the SLRO's decision, and argue that both the IHO and the SLRO were insufficiently critical of the school district's position, there is no indication that either improperly limited their review to certain criteria. The parents may disagree with the way the administrative officers construed the evidence presented to them, but that is not the equivalent of a failure to consider evidence.

Accordingly, because this particular eligibility determination is one involving educational expertise and because the "administrative findings in [this] IDEA case . . . [do] not . . . preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both," *Burilovich*, 208 F.3d at 566, the SLRO's IDEA eligibility determination shall be affirmed. *See also Boutsikaris*, 250 F. Supp. at 729 (Courts should "rely upon the hearing officer's presumed educational expertise, as long as the material facts

underlying the officer's determination are not in dispute."); *J.K. v. Fayette C'ty Bd. of Educ.*, 2006 WL 224053 at *3 ("Where educational expertise is relevant to the substantive findings and the decision below is reasonable, the court should defer to the administrative agency.").

### 2. Reimbursement for IEE Expenses

The plaintiffs also contend that the school district improperly denied them reimbursement of the cost of their IEE. A parent of a child with a disability "has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the school district." O.A.C. § 3301:51-05(F)(3). "If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either– (i) Initiate a hearing under § 300.507 to show that its evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under § 300.507 that the evaluation obtained by the parent did not meet agency criteria." 34 C.F.R. § 300.502.

Here the parties dispute whether the parents properly requested the IEE. While the SLRO concluded that the parents did not properly request the IEE, that finding is not one drawing on the SLRO's educational expertise and, accordingly, is not subject to the same deference. From the record available in this forum, it is unclear exactly what the parents requested, from whom, and in what form they made that request. Judgment, accordingly, is premature on this issue for either party.

### 3. The § 504 Rehabilitation Plan

Finally, the plaintiffs claim that the SLRO erred in concluding that the student was ineligible for § 504 services.

Absent a specific claim for § 504 relief, IDEA administrative officers generally have no jurisdiction to order services under that statute. *In re Upper Arlignton City Sch. Dist.*, ODE Case No. SE-1380-2003, p. 49 (IHO Scholl April 5, 2004); *see generally George West Ind. Sch. Dist.*, 35 IDELR 287 (2001). The Sixth Circuit has confirmed that holding, also noting that § 504 relief is unavailable where the related IDEA claims also fail. *N.L. ex rel. Ms. C.*, 315 F.3d at 695-96.

In this case, plaintiffs did not request § 504 relief and their parallel IDEA claims are without merit. For both reasons, the SLRO was correct to deny § 504 services.

## Conclusion

In light of the foregoing, it is, therefore,

ORDERED THAT:

1. Defendant's motion for judgment on the record with respect to the SLRO's denial of IDEA special education services shall be, and the same hereby is granted;

2. Defendant's motion for judgment on the record with respect to the SLRO's denial of § 504 services shall be, and the same hereby is granted;

3. Defendant's motion for judgment on the record with respect to the SLRO's denial of the parents' IEE reimbursement request shall be, and the same hereby is denied;

4. Plaintiffs' motion for judgment on the record with respect to the SLRO's denial of the parent's IEE reimbursement request shall be, and the same hereby is denied.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge